UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                              :
YAMILSE GONZALEZ,                                             :   Case No. 18-cv-6328-BMC-PK
                                                              :
                        Plaintiff,                            :   **AMENDED COMPLAINT**
                                                              :
        v.                                                    :
                                                              :
MARIA LILIANA MONTOYA,                                        :
                                                              :
                        Defendant.                            :
                                                              :
------------------------------------------------------------- X

Plaintiff Yamilse Gonzalez ("Plaintiff" or "Ms. Gonzalez") by and through her attorneys, brings this action against Defendant Maria Liliana Montoya ("Defendant" or "Ms. Montoya"), and hereby alleges:

## INTRODUCTION

1.       Plaintiff Yasmilse Gonzalez sought work as live-in domestic worker and accepted a position with Defendant Montoya to provide special care for her son with a disability. For the approximately 15.5-week period of her employment, Ms. Montoya forced Ms. Gonzalez to work under unconscionable conditions. Ms. Gonzalez cared for Defendant's son and home 24-hours a day, while Defendant deprived Ms. Gonzalez of any privacy and had Ms. Gonzalez sleep on the floor beside Defendant's bed. Because Ms. Gonzalez was required to monitor the blood sugar levels of Ms. Montoya's son throughout the night, she never received an uninterrupted break of more than 2 hours to get much needed sleep. Ms. Montoya agreed to pay Ms. Gonzalez a woefully inadequate and illegal wage at the onset of her employment, which Defendant stopped paying after her first two weeks of work. For the following three months, Defendant did not pay

1

Ms. Gonzalez a single penny for all her hard work, until a week before Ms. Gonzalez quit, when Defendant paid her $2000.00. During the employment, Ms. Gonzalez had no free time or ability to leave Defendant's home for her own purposes. Ms. Montoya threatened Ms. Gonzalez frequently throughout her employment, often telling her she would report to her to the police if anything happened to her son, or left the apartment without Ms. Montoya's permission. During the 3.5 months of her employment, working at least 20-hour days, 7 days a week, Defendant paid Ms. Gonzalez a total of only $2,800.00, which averages to less than $1.50 per hour for each hour she worked.

2. This is an action for damages for forced labor under the Trafficking Victims Protection Reauthorization Act of 2013 ("TVPRA"), violations of minimum wage under the Fair Labor Standards Act ("FLSA"), violations of minimum wage, overtime, spread-of-hours and wage notices under New York Labor Law ("NYLL"), and negligent infliction of emotional distress, and Plaintiff Gonzalez seeks compensatory and punitive damages for injuries suffered while forced to work for Defendant.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over the parties and this action pursuant to Trafficking Victims Protection Reauthorization Act, 18 U.S.C. §§ 1589, 1595 and Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, 29 U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337.

4. This Court has supplemental jurisdiction over the state law claims Ms. Gonzalez asserts herein pursuant to 28 U.S.C. § 1367(a) because those claims are so closely related to Ms. Gonzalez's federal claims, having arisen from a common nucleus of operative facts, that they are part of the same case or controversy.

5. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the majority of the events giving rise to this action occurred in this judicial

district.

## PARTIES

6. Plaintiff Gonzalez is an adult individual who currently resides in New York, New York. From approximately June 8, 2017 to September 24, 2017, Plaintiff was employed as a domestic worker and a child care provider by Defendant at her residence in Corona, New York. At all times relevant to this action, Plaintiff was an "employee" of Defendant as defined in NYLL § 190(2) and 12 NYCRR § 142-2.14.

7. Upon information and belief, Defendant Montoya is an adult individual who currently resides in Corona, New York. From approximately June 8, 2017 to September 24, 2017, Defendant was Ms. Gonzalez's employer within the meaning of FLSA, 29 U.S.C. §203(d); N.Y. Labor Law §§ 2(6), 190(3), and 651(6).

## FACTUAL ALLEGATIONS

8. In May 2017, Ms. Gonzalez contacted the Carmen Employment Agency, Inc. (the "Agency") on Roosevelt Ave in Jackson Heights, Queens in order to find work.

9. Through the agency, Ms. Gonzalez learned about the job working for Defendant Maria Liliana Montoya as a live-in caretaker for Defendant's special-needs son at Defendant's residence at 112-45 39th Avenue, Corona, NY 11368. Upon information and belief, Defendant's son has Type I diabetes and requires special attention and care.

10. Ms. Gonzalez was told by the Agency that the work would require checking the Defendant's son's sugar and insulin levels and administering shots. The Agency told Ms. Gonzalez she would earn $500.00 a week for normal working hours and would be provided a place to live. Ms. Gonzalez expected that the normal working hours consisted of 8-9 hours of work per day, six days a week. The Agency told Ms. Gonzalez that she would also be required to do light housekeeping.

3

11. Ms. Gonzalez paid the Agency $130.00 for the job placement. Ms. Gonzalez signed a contract with the Agency for the job placement on June 5, 2017.

12. Ms. Gonzalez began working for Defendant on June 8, 2017. Defendant's two children were living at the apartment with Ms. Gonzalez – Defendant's special needs child, who was 12 years old, and Josie, who was 22 years old. Ms. Gonzalez was primarily responsible for caring for Defendant's special needs child.

13. During the course of Ms. Gonzalez's employment, Defendant worked in the evenings from 11 p.m. to 5 a.m. and would frequently leave for multiple days on business trips to other states. In her absence, Defendant left Ms. Gonzalez alone to care for her special needs child and to take care of the apartment. Defendant frequently called Ms. Gonzalez for updates over the phone.

14. During the course of the employment, Ms. Gonzalez did not have any privacy, including access to neither a private bedroom or bathroom. Instead, she slept on the floor of Defendant's bedroom.

15. Ms. Gonzalez was not allowed to leave Defendant's special needs child alone.

16. Defendant prohibited Ms. Gonzalez from leaving the apartment without the Defendant's explicit permission. Defendant threatened Ms. Gonzalez, saying that if Ms. Gonzalez left the apartment without Defendant's permission, Defendant would call the police.

17. Ms. Gonzalez was required to cook meals for all members of Defendant's family living at the apartment and for any guests who were visiting the apartment.

18. Ms. Gonzalez was required to clean the entire house, wash all the family members' clothes by hand, and iron all of the family members' clothes.

19. Ms. Gonzalez was required to get up every two hours during the night to check Defendant's child's blood sugar levels. If the child's blood sugar was low or high Ms. Gonzalez

4

was not allowed to sleep and was required to care for the child all night by monitoring, feeding, or administering insulin. During these events Defendant would constantly call Ms. Gonzalez for updates and often threaten that if anything happened to her child, Defendant would report Ms. Gonzalez to the police. During these episodes, Ms. Gonzalez experienced extreme anxiety and emotional and physical duress due to the Defendant's verbal harassment and being forced to stay awake all night.

20. Defendant would regularly criticize and harass Ms. Gonzalez, telling her that she was too slow, too stupid, and made too many mistakes.

21. Defendant and Ms. Gonzalez shared a bathroom and Defendant would verbally harass Ms. Gonzalez, telling Ms. Gonzalez that she was a dirty person and unworthy of using the same bathroom as Defendant.

22. Defendant paid Ms. Gonzalez promptly for two weeks, $300.00 for the first week and $500.00 for the second, but then refused to pay Ms. Gonzalez for any work thereafter for three months.

23. Ms. Gonzalez complained to Defendant about the lack of payment and the long working hours and asked for a day off and for more breaks. Defendant responded by saying that Ms. Gonzalez had agreed to these working conditions, that Ms. Gonzalez would have no days off, and that Ms. Gonzalez was to be on call 24/7.

24. Ms. Gonzalez called the Agency to complain about the working conditions and the unpaid wages. The Agency said they could not do anything about the working conditions.

25. When Defendant would return from business trips, Defendant would not take care of her special needs child, and, instead, Defendant would get drunk. When Defendant drank alcohol, she would become more verbally abusive towards Ms. Gonzalez and Defendant's behavior became erratic. Defendant used physically threatening language. Defendant would

make Ms. Gonzalez get her beer, and if she misplaced the drinks, she would accuse Ms. Gonzalez of stealing the drinks and verbally harass her more. At points, Defendant's child would hide the drinks to discourage his mother from drinking more.

26.     Defendant granted Ms. Gonzalez permission to leave the apartment for limited purposes, such as shopping for the household or walking the Defendant's dog. During these outings, Ms. Gonzalez would purchase her own food for breakfast. However, while Ms. Gonzalez was at the grocery store, Defendant would call her constantly, asking when she would return and criticize her for taking too long to complete the errand.

27.     Ms. Gonzalez was afraid that Defendant would physically assault her because Defendant would often act in erratic and unpredictable ways including shouting and screaming at individuals including Ms. Gonzalez.

28.     Ms. Gonzalez observed Defendant acting in a physically violent manner. In one instance, Defendant lost her temper and physically assaulted her older son Josie, by hitting him in the face. Ms. Gonzalez observed Defendant smashing, breaking, and throwing objects and furniture.

29.     Defendant told Ms. Gonzalez that Defendant would hit anyone who crossed her. Defendant threatened Ms. Gonzalez by calling her a loser and warned Ms. Gonzalez "not to fuck with her."

30.     Ms. Gonzalez was afraid and intimidated by Defendant and believed that if she disobeyed her, Defendant would physically assault her or call the police on her.

31.     Ms. Gonzalez was permitted to leave the apartment to accompany Defendant's special needs child to the park nearby where the child was allowed to play, but this happened on rare occasions but was required as part of her work.

32. When alone together, the child would apologize to Ms. Gonzalez for how Defendant, his mother, was treating her.

33. On the rare occasion, if there were no household chores left to complete, Ms. Gonzalez was permitted to leave the house and take a walk around the neighborhood for approximately an hour on Sundays, as personal time. This was the only free time she was allowed during the course of her employment.

34. When the school year began in September 2017, Defendant failed to submit the proper paper work to allow her son to bring his insulin to school and to allow the nurses at the school to administer necessary blood sugar tests. As a result, Ms. Gonzalez was required to accompany the child to school and to meet him in between periods and during lunch periods, to test his blood sugar and to administer insulin. During her trips to meet the child at school, Ms. Gonzalez would take a taxi and pay for the taxi herself. Defendant would not pay or reimburse her for the transportation costs to and from the school.

35. After many weeks of not being paid, Ms. Gonzalez again asked Defendant about her unpaid wages and the money that was owed to her. Ms. Gonzalez threatened to leave if she was not paid, but Defendant begged her to stay, saying that she was doing a great job and that the only way she was going to receive her unpaid wages was by continuing to work.

36. Defendant coerced Ms. Gonzalez into working under these conditions and without pay by threatening to involve the police, and by routinely acting in a physically violent manner and verbally harassing, abusing, and threatening Ms. Gonzalez.

37. Eventually, in late September, Ms. Gonzalez again asked Defendant for the unpaid wages that she was owed. On September 17, 2018, Defendant paid Ms. Gonzalez $2,000.00. Defendant then told Ms. Gonzalez she could only pay her $350.00 per week going forward.

38. On September 24 2017, Ms. Gonzalez left the apartment and did not return to work for Defendant.

39. A few days later, Ms. Gonzalez returned to the apartment to ask for the unpaid wages. When confronted with this demand, Defendant became very agitated and verbally abused Ms. Gonzalez in the doorway of the apartment. Ms. Gonzalez never received her unpaid wages.

40. In total, Ms. Gonzalez worked for Ms. Montoya for 3.5 months/15.5 weeks from June 8, 2017 through September 24, 2017. During this period, Ms. Gonzalez worked approximately 20 hours per day, which equates to 140 hours per week. In total, Defendant paid Ms. Gonzalez only $2,800.00, which averages to less than $1.50 per hour for each hour she worked.

**CLAIMS FOR RELIEF**

**First Cause of Action**

**Trafficking Victims Protection Reauthorization Act - Forced Labor**
**(18 U.S.C. §§ 1589, 1595, 1596)**

41. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

42. Plaintiff is authorized to bring this civil claim against Defendant pursuant to the civil remedies provision of the TVPRA. 18 U.S.C. § 1595.

43. From approximately June 8, 2017 through September 24, 2017, Defendant knowingly obtained the labor or services of Plaintiff by threats of force and by threatened abuse of legal processes, in violation of 18 U.S.C. § 1589.

44. Defendant coerced Ms. Gonzalez into working under these conditions and without pay by threatening to call the police, and by routinely acting in a physically violent manner and verbally harassing, abusing, and threatening Ms. Gonzalez.

45. Plaintiff suffered injuries as a result of these actions.

46. Plaintiff is entitled to an award of compensatory and punitive damages, damages as a result of pain and suffering, attorneys' fees, and costs, in an amount to be determined at trial.

## Second Cause of Action

### Fair Labor Standards Act - Minimum Wage
### (29 U.S.C. § 201, *et seq*.)

47. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

48. From June 8, 2017, through September 24, 2017, Plaintiff was employed as a domestic worker and child care provider in the United States, such that she was engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 206(f), 29 C.F.R. § 552.99.

49. Defendant was Plaintiff's employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

50. Pursuant to 29 U.S.C. §206(a)(1) of the FLSA, Defendant was required to pay plaintiff the legal minimum wage for work performed during the relevant period.

51. Defendant knowingly failed to pay plaintiffs the applicable legally mandated minimum wage, in violation of the FLSA, 29 U.S.C. § 206(a)(1).

52. Defendant knew or should have known that the practices described above were unlawful. Defendant failed to make a good faith effort to comply with federal wage and hour laws.

53. As a result of Defendant's violations of the FLSA, Plaintiff is entitled to recover from Defendant her unpaid minimum wages, an additional amount in liquidated damages, and reasonable attorneys' fees and costs, including post-judgment interest, in amounts to be determined at trial.

### Third Cause of Action

### New York Labor Law - Minimum Wage Violation
### (N.Y. Labor Law § 625)

54. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

55. Under the NYLL § 652, Plaintiff was entitled to be paid a lawful minimum wage for all hours worked while employed by Defendant in New York.

56. Defendant was Plaintiff's employer within the meaning of NYLL § 2 and 651.

57. Throughout the period of Plaintiff's employment with Defendant in New York, the minimum wage in New York was $10.50.00 per hour. NYLL § 652(1).

58. Defendant did not act in good faith when she failed to pay Plaintiff the minimum hourly wage in accordance with the NYLL.

59. As a result of Defendant's violations of the NYLL, Plaintiff is entitled to recover from Defendant her unpaid minimum wages, an additional equal amount in liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be determined at trial.

### Fourth Cause of Action

### New York Labor Law – Overtime Violation
### (12 N.Y.C.R.R. § 142-2.2)

60. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

61. Under the NYLL, defendants are required to compensate plaintiffs at a rate of one and one-half times her regular rate of pay for each hour worked in excess of forty-four hours per week. 12 N.Y.C.R.R § 142-2.2.

62. Defendant willfully failed to pay plaintiffs overtime wages at a rate of one and one-half times her regular rate of pay for each hour worked in excess of forty-four hours per week, in violation of the NYLL and its accompanying regulations, including 12 N.Y.C.R.R. § 142-2.2.

63. Defendant's failure to pay Plaintiff's overtime wages was willful and intentional.

64. As a result of Defendant's violations of the NYLL, Plaintiff is entitled to recover from Defendant her unpaid minimum wages, an additional equal amount in liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be determined at trial.

### Fifth Cause of Action

### New York Labor Law – Spread of Hours
### (12 N.Y.C.R.R. § 142-2.4)

65. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

66. Under 12 N.Y.C.R.R. § 142-2.4, Plaintiff should have received an extra hour of pay at the minimum wage for each day in which her "spread of hours" (the interval between the beginning and end of an employee's workday) exceeded ten hours.

67. Defendant was Plaintiff's employer within the meaning of NYLL §§ 2, 190, and 651.

68. Throughout the period of Plaintiff's employment with Defendant in New York, The New York State minimum wage was $10.50 per hour.

69. Under the NYLL, Defendants are required to compensate plaintiffs an extra hour's pay for every day they worked in which the interval between their start and end time exceeded ten hours.  12 N.Y.C.R.R § 142-2.4.

11

70. Defendant willfully failed to pay plaintiffs an extra hour's pay for every day they worked in which the interval between their start and end time exceeded ten hours, in violation of the NYLL and its accompanying regulations, including 12 N.Y.C.R.R. § 142-2.4.

71. Defendant's failure to pay plaintiffs spread-of-hours compensation was willful and intentional.

72. As a result of Defendant's violation of NYLL § 663, Plaintiff is entitled to recover from Defendant her unpaid wages, an additional equal amount in liquidated damages, and reasonable attorneys' fees and costs, including pre- and post-judgment interest, in amounts to be determined at trial.

### Sixth Cause Of Action

**New York Labor Law – Notice of Pay Rate Violation**
**(NYLL § 195(1))**

73. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

74. From June 8, 2017 through September 28, 2017, Plaintiff was employed by Defendant in New York within the meaning of the NYLL §§2, 190, and 651.

75. Under the NYLL, Defendant was required to provide to Plaintiff upon her hiring a notice setting forth, *inter alia*, her regular rate of pay and her overtime rate of pay. NYLL § 195(1)(a).

76. Defendant failed to provide Plaintiff with any such notice upon her hiring, in violation of the NYLL.

77. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant $50.00 for each workday that the violations occurred and continued to be unremedied,

up to a total of $5,000.00 together with reasonable attorneys' fees and costs and any other relief that the Court may deem necessary or appropriate. NYLL § 198(1-b).

### Seventh Cause of Action

### New York Labor Law – Wage Statement Violation
### (NYLL § 195(3))

78. Plaintiff realleges and incorporates by reference all preceding paragraphs as if set forth herein.

79. From June 8, 2017 through September 24, 2017, Plaintiff was employed by Defendant in New York within the meaning of the NYLL §§2, 190, and 651.

80. Under NYLL § 195(3), Defendant was required to provide to Plaintiff a statement of wages with every payment of wages.

81. Defendant failed to provide Plaintiff with wage statements in violation of the NYLL.

82. Due to Defendant's NYLL violations, Plaintiff is entitled to recover from Defendant $250.00 for each workday that the violations occurred and continued to be unremedied, up to a total of $5,000.00 together with reasonable attorneys' fees and costs and any other relief that the Court may deem necessary or appropriate. NYLL § 198(1-d).

### Eighth Cause of Action

### Negligent Infliction of Emotional Distress

83. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs herein.

84. Defendant owed Plaintiff a duty of care as her employer while Plaintiff from June 8, 2017 through September 24, 2017.

85. Defendant breached that duty of care by engaging in the conduct described above including, but not limited to, forcing and coercing Plaintiff to work additional hours and conduct additional tasking, restricting Plaintiff's ability to leave Defendant's residence, verbally harassing and abusing Plaintiff, consistently calling and monitoring Plaintiff's activities and movements, and threatening Plaintiff with repercussions if she failed to do an adequate job caring for Defendant's son.

86. Defendant's conduct and breach of duty of care caused Plaintiff to suffer grave emotional distress, including anxiety, humiliation, and fear.

87. Plaintiff is entitled to an award of compensatory and punitive damages to be determined as a result of pain and suffering.

## DEMAND FOR JURY TRIAL

88. Plaintiff is entitled to and hereby demands a jury trial in this matter.

## PRAYER FOR RELIEF

89. Wherefore, Plaintiff requests that this Court grant the following relief:

   (a) Enter a judgment in favor of Plaintiff in each and every cause of action asserted in this Complaint;

   (b) Award such damages as may be appropriate, including compensatory, punitive and liquidated damages;

   (c) Award Plaintiff her attorneys' fees and costs;

   (d) Aware Plaintiff pre- and post-judgment interest; and

   (g) Award any such other and further relief as this Court may deem appropriate, just, and proper.

| | |
|---|---|
| Dated this February 22, 2019<br>New York, New York | Respectfully submitted<br><br>s/ Tito Sinah<br><br>URBAN JUSTICE CENTER<br>S. Tito Sinha<br>Community Development Project<br>Urban Justice Center<br>123 William Street, 16th Floor<br>New York, NY 10038<br>(646) 459-3012 (Tel)<br>(212) 533-4598 (fax)<br>tsinha@urbanjustice.org<br><br>and<br><br>s/Michael DiGiulio<br><br>Michael DiGiulio<br>SUPER LAW GROUP, LLC<br>180 Maiden Lane, Suite 603<br>New York, New York 10038<br>(212) 242 2355<br>mike@superlawgroup.com |